20 221
56a 178

THE JOLIET AND NORTHERN INDIANA RAILROAD COMPANY, Appellant, *v.* ROBERT JONES, Appellee.

APPEAL FROM WILL.

If the bill of exceptions includes the pleadings of the parties, the costs of so much of the record as contains these pleadings in the bill should be taxed against the party who caused their insertion.

If a deed has been given to one corporation, and assigned by it to another, or if the name of the corporation has been changed, proof of such averments must be made where the plea of the general issue has been interposed.

Joliet and Northern Indiana Railroad Company *v.* Jones.

In a suit against a railroad company for injuries to sheep, arising from neglect to build a fence, as it had contracted to do, the question is not whether the fence would have made a perfect inclosure as against the road, but whether the neglect contributed to the injury.

Where the negligence charged is not in the running of the train, but in not building a fence, if it does not appear that the sheep got upon the track because this fence was not built, other parts of the field not being inclosed, the plaintiff will not be relieved from the exercise of proper care, and he cannot recover if his negligence was the direct and proximate cause of the injury.

THIS was a suit in case brought by appellee against appellant, in Will Circuit Court, and tried at the May term, A. D. 1857. Verdict for plaintiff, $231.50.

The declaration contains but one count. It first recites that defendant, " under and by the corporate name of the Oswego and Indiana Plank Road Company," on the 13th October, 1853, being about to construct a railroad from Joliet to State Line, applied to plaintiff for right of way across his land, being E. half N. E. qr. section 14, township 35 N., range 10 E., in Will county; that plaintiff, in consideration, among other things, that defendant, before their railroad went into operation, would make a fence along south side of the road, conveyed to them, " then a corporation, under the name of Oswego and Indiana Plank Road Company," by deed, a certain tract, describing it, situated in the north-east corner of the said tract, and that defendant accepted the deed upon that condition, and with express promise to build such fence. It then avers that, on 24th day of June, 1855, after the road was built across the land and in operation, and while plaintiff still owned and possessed the land adjacent on the south, defendant neglected to build the fence; and that certain sheep, then feeding in plaintiff's close, escaped, got on to the railroad, and " were run over by the locomotives and cars, then and there passing and repassing on said railroad," alleging the killing of some, the injury of others, and costs of necessary care and attendance to the injured. Damages laid at $500.

Plea, general issue and *similiter*.

Plaintiff offered, in evidence, the record of a deed from himself to the Oswego and Indiana Plank Road Company, dated 13th October, 1853, being the same referred to in the declaration, and conveying ·the *premises*. Contained the following words in the *habendum* clause : " Subject to the following covenants of the said party of the second part, to wit: they are to erect and forever maintain a good and sufficient fence along the south side of their said railroad, and are to build, and maintain in suitable repair, a sewer, of suitable materials, under their said railroad, so that the water from the spring, and the surface

water from the adjacent premises of the first party, may pass freely off at all times after said railroad shall be built."

*John W. Stevens,* called on the part of the plaintiff, said, in substance : Knew localities in question ; land in possession of plaintiff, who resided there at the time of the accident. No fence on the south side of the railroad at the time. Plaintiff's flock of sheep in the habit of laying around the barn on the hill, opposite the track; they were not inclosed at the time, but running at large. The south line of eight acre tract conveyed about half way between barn and railroad. In the morning, found nine sheep dead on the track, and forty-four injured ; sixteen more were killed ; six or seven of the wounded sheep died afterwards—rest recovered. In addition to twenty-five which were killed, seven or eight more died within six weeks.

He further testified that the most natural place for the sheep to get on the track from the barn was straight across. There were no fences at the time on the east and west lines of plaintiff's land, extending to the south line of the railroad ; there was a highway crossing east of the east line of plaintiff's land, and there was no inclosure along the highway from the barn to the railroad. Accident occured early in the morning. Did not know what company were operating the road ; did not know whether the train in question belonged to Michigan Central or Chicago and Mississippi.

*Henry Johnson,* called by the plaintiff : Lived near land in question. From the barn there was no difficulty in getting on to the track anywhere. Quite a wide bottom between bluff where barn stood and railroad, extending for some rods along the highway, which crosses the railroad on the east.

*Richard Newkirk,* next called for plaintiff : The track was from five to six feet high ; grass on each side, in the bottom. At night, it was natural for the sheep to seek the track to lie down upon. There was a highway crossing not more than three or four rods from east line of land in question. It was from ten to twelve rods from where nearest sheep was killed.

*Joel A. Matteson.* The possession of the road was transferred to Michigan Central Company in the early part of June, 1855. Defendant never operated road with freight or passenger trains. The trains were of Michigan Central or Chicago and Mississippi, which then ran trains on road. Witness was the agent of the Oswego and Indiana Plank Road Company.

*N. D. Elwood,* then called for defendant. Transfer to the Michigan Central Company consummated 4th June, 1855.

Defendant then moved to exclude from jury the evidence relating to deed in question, upon the ground that the identity of the Oswego and Indiana Plank Road Company with the

defendant had not been proved, and was not presumable from identity of name, which was overruled, and defendant excepted.

The defendant's counsel then asked the following, among other, instructions:

2nd. If no evidence has been produced by the plaintiff, satisfying the jury that the defendant, the Joliet and Northern Indiana Railroad Company, are the same identical corporation with the Oswego and Indiana Plank Road Company, which made the contract for which the plaintiff sues, then the plaintiff has failed to sustain his declaration, and the law is for the defendant.

Which the court refused to give.

3rd. Although the jury should believe, from the evidence, that the defendant was bound, by the conditions in the deed of the right of way from Robert Jones, to build a fence along the railroad on the south side thereof, and had failed to do so, yet this breach of duty on their part did not absolve the plaintiff from the exercise of such care and prudence in the management of his stock as the actual condition of his farm and the circumstances of the case seemed to call for at the time.

Which was given.

4th. If, from the evidence, the jury believe that the immediate agency which killed or injured the plaintiff's sheep was a locomotive engine on the railroad track, running against them, then, although from all the circumstances the jury might imagine it probable that the sheep would not have been on the track if a fence had been built, according to contract, yet, if such want of fence is not the immediate and proximate cause of the injury, that fact would not of itself make the company liable.

Which was given.

5th. That although the defendants may themselves have been guilty of negligence in the management of the train in question, either by not giving the proper signals in time, or by not keeping a proper look-out, or by not slackening the speed of the train, yet if the plaintiff was also guilty of want of proper and reasonable care and prudence on the occasion, by leaving his sheep in an uninclosed field on the side of and open to the railroad, then, unless the proof shows that the conduct of the engineer was wanton and malicious, and not merely careless and imprudent, the law is for the defendants, and plaintiff cannot recover for the damage done.

Refused, and the defendant excepted.

7th. First clause: "In order to make the defendant liable in respect to the condition inserted in the deed to fence the road on the south side, it is incumbent on the plaintiff to prove, by evidence either positive or circumstantial, that the sheep got

on to the railroad track at some point in the line which the defendant was so bound to fence, and not elsewhere."

Which was given.

Second clause : " And it is also incumbent on him to prove that such fence, if built, would have formed a perfect inclosure for said sheep from and against the railroad."

Which was refused, and defendant excepted.

10th. If the jury believe, from the evidence, that the entire agreement in regard to the fencing of the plaintiff's land in question was finally contained and embodied in the condition or provision in the deed on which the suit is brought, then the said agreement forms the only measure of the rights of the parties, and no evidence of previous agreements or negotiations between the parties in regard to said fencing is admissible.

Which was given.

This cause was tried by NORTON, Judge, and a jury.

PARKS & ELWOOD, for Appellant.

W. K. McALLISTER, for Appellee.

BREESE, J.  The right to maintain this action by Jones against this Railroad Company, is established by the case of *Conger* v. *The Chicago and Rock Island Railroad Company*, 15 Ill. R. 366, a case, in its legal aspect, identical with this. The errors assigned in this record are, in refusing the second instruction asked for by the defendants below, the appellants here, to the effect that " it was incumbent on the plaintiff below to prove the identity of the Joliet and Northern Indiana Railroad Company with the Oswego and Indiana Plankroad Company, with which the contract sued on was made ;" in refusing to give the second clause of the seventh instruction asked for by the appellants ; in refusing the fifth instruction ; in not excluding from the consideration of the jury the deed from Jones to the Oswego and Indiana Plankroad Company, upon the motion of the defendants below ; in admitting testimony after the deed had been produced, designed to prove verbal agreements made previously, touching the same subject matter ; in refusing the motion for a new trial for the reason assigned, that the verdict was against law and evidence ; and in refusing to arrest the judgment for the reason assigned, that the declaration did not state a legal cause of action.

As preliminary, we may notice here, that the bill of exceptions contains the declaration and pleadings in the cause, thus incumbering the record and occasioning costs for no good purpose. It is the office of a bill of exceptions to bring before the appel-

late court matters *de hors* the record only, not the pleadings of
the parties, for they are intrinsic, and are necessarily on the
record, without being preserved by a bill of exceptions. The
costs of so much of this record as contains these pleadings in
the bill of exceptions, should be taxed against the party who
caused them to be put in it.

As to the first error assigned, the rule is, in all cases, that the
best evidence of which the nature of the case is susceptible,
must be produced; and another is, that the material averments
of a declaration must be proved. The averment in this
declaration is, that the defendant, " then a corporation under
the name of Oswego and Indiana Plankroad Company, received
the deed for the land, and that defendant accepted the deed
upon the condition therein contained, and expressly promised to
build the fence." The deed was made to the Plankroad Com-
pany, and the inquiry arises, where is the evidence that this
company and the defendant are identical? The averment is,
the defendant accepted the deed, by the name of the Oswego
and Indiana Plankroad Company, and the testimony of Matteson
and Elwood shows, that the defendant was the owner of the
railroad up to June 4, 1855, at which time it was transferred
from the defendant to the Michigan Central Railroad. It is
very true, where a deed is made to a corporation or individual,
by a name different from the true name, the plaintiff may sue in
their true name, and aver in the declaration that the defendant
made the deed to them by the name mentioned in the deed.
But that is not this case. The deed was made to the party by
its true and proper corporate name, but there is no proof tend-
ing to show that the corporation now defending is the same
corporation as that which received the deed. If it be the fact,
it is susceptible of proof. The mere averment of identity is
not sufficient, and the plea of the general issue puts that fact, as
well as every other one not protected by our practice act and
rules of pleading, directly in issue. We think there is an entire
absence of proof establishing this identity.

As to the second clause of the seventh instruction, we think
there was no error in refusing it, as it is immaterial, so far as
the duty of the defendants is involved, whether the fence they
engaged to make would have formed " a perfect inclosure for
the sheep from and against the railroad," or not. The duty,
under the contract, was to build the fence; its effect or utility,
when built, is another and different question. The liability of
the company, in this action, for the neglect of this duty would
depend entirely on the question of fact to be found by the jury,
whether this neglect of duty contributed to the injury of which
complaint is made.

The fifth instruction raises the question, as to which party the negligence is most properly chargeable.

It will be observed, that the declaration does not go upon the negligence of the defendants in running their train. It proceeds solely upon the ground of neglect to build the fence, by means of which the injury resulted by the destruction of the sheep. This being so, the question is still behind, though the defendants neglected their duty, does this excuse the plaintiff from the exercise of that ordinary care every prudent man bestows upon his own? We think not. All the testimony in the cause shows, if the few rods of fence the defendants were required to make, would not, when made, have constituted an inclosure; for the other sides were open and uninclosed, and there is no evidence to show that the animals got upon the railroad by the line the defendants were to fence; and the inference is as fair that they did not so get upon it, as that they did.

It cannot be denied, that the plaintiff kept his sheep, whose habits he should know, very negligently, far more so than an ordinarily prudent man takes of such property. They were subject to destruction every hour in the day, by trains running at their usual speed; and although the defendants might be bound to make the fence, it did not exempt the plaintiff from the obligation to take ordinary care for the protection of the animals. His negligence was the direct and proximate cause of the injury, and the defendants should have the benefit of that principle.

For the reasons given, the judgment is reversed, and the cause remanded.

*Judgment reversed.*