60   295
56a  179
60   295
69a  435

## Chicago, Burlington & Quincy Railroad Co.

*v.*

## William Seirer.

1. NEGLIGENCE—*repairing fence*. Where a person's cattle break through the fence on the side of a railroad track, and the owner of the cattle repairs it with defective materials, in a temporary manner, but it is apparently sufficient, and his cattle again break through the same place, and are killed, and it appears that he knew that the fence thus repaired was defective, and he failed to notify the employees of the company: *Held*, that he was guilty of negligence. The owner of adjoining lands has no right to remain inactive and let his cattle get upon the railroad track through the known deficiency of the fences along the road. When he undertook to

repair the fence, and did it negligently, and failed to notify the company, he became liable for the natural consequences of his negligence.

2. It was not error for the court to amend an instruction so as to inform the jury, in such a case, that the company should have had notice that the fence apparently good was defective, before they would be liable for the injury to the stock. But the failure on the part of the owner to use reasonable efforts to notify the company of such defects, in any case where the defects are known to the proper agents of the company, would not justify the company in failing to repair.

3. In such a case, it was error for the court, without limitation or qualification, to instruct the jury that, if the fence was defective, the company were liable. It should not, under the facts in the case, have laid down the rule of absolute liability.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. KIDDER, NORCROSS & GLENN, and Mr. B. C. COOK, for the appellant.

Mr. JAMES W. DAVIDSON, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was an action under the statute, brought by appellee against appellant, in justice's court, to recover the value of a cow and steer of appellee, which had been killed upon appellant's track running through or adjoining appellee's farm.

Appellee having obtained judgment in that court, appellant took an appeal to the circuit court of Warren county, wherein the cause was tried before a jury, who returned a verdict in favor of appellee, assessing his damages at $85. Appellant moved for a new trial, which was overruled by the court, and judgment given upon the verdict. All the evidence, instructions and exceptions were preserved by a bill of exceptions, and the case brought here by appeal.

It appears, by appellee's own evidence, that, about a year prior to the killing of the cattle, they broke down the fence and got upon the railroad track, and he undertook to repair

the fence where so broken ; that he put on a board of his own and nailed it; that at the time the cow and steer got on the track and got killed, they broke through the same place, and he says that the fence at the place where they got through this last time was insufficient to turn stock; that he saw the place where they got through, the day before. There were four boards on the fence where the cattle broke through; one of these boards he put on himself; it was not a good board, but it looked well enough. There was (meaning at the time of the first breach) one broken board, but it was repaired by him by putting another in its place, and by nailing one perpendicularly on the four boards, and this was on the side next his pasture; that this was done temporarily; he just tacked them on; that he never notified the defendant, or any of its agents, that the fence was out of order. He told one of the section hands, whose name he did not know, that the fence had been broken down, and that he had fixed it up, but should not fix it again. This was the only evidence as to the insufficiency of the fence.

Appellant introduced evidence tending to show that the company kept a section agent, whose business it was to look after the fences; that this locality was in his section; that he was along there, in the performance of his duty, the morning before the cattle were killed; that the fence was good and sufficient, to all appearances; that it was made of cedar posts 10 inches in diameter, with four boards; that the boards were battened at every post, put on with 16-penny nails, and about eight nails to each batten, and that the fence was five or five and a half feet high, being four boards.

The case made by appellee's own evidence is simply this: Sometime before the injury happened his own cattle had broken down a portion of the fence between the railroad track and his pasture. Without notifying appellant, or any of its agents, he undertakes to repair it, and, in doing so, seems to have knowingly made and left it insufficient. He testified that the board he put in was a bad one, though it looked well enough; that he only tacked up the boards temporarily, and

it was insufficient at this place to turn stock. With this knowledge, he permitted his stock to run where they were continually exposed to the danger of getting upon the track by means of this defective portion of the fence.

In *Poler* v. *New York Central Railroad,* 16 N. Y. R. 476, Mr. Justice SELDEN said : "There is no doubt that, although the statute imposes upon the railroad company the absolute duty of maintaining fences, yet a duty in this respect also devolves upon the proprietors along the road. They have no right quietly to fold their arms and voluntarily permit their cattle to stray upon the railroad track through the known insufficiency of fences which the corporation are bound to maintain."

The law, certainly, will not permit a man to set a snare for his own cattle, voluntarily expose them to it, and then to recover of somebody else for the injury thus received.

If the fence were originally a suitable one, and there is no evidence that it was not, it was the duty of appellee to notify, or make reasonable efforts to notify, the company of the defect occasioned by his cattle breaking down a portion of it, unless he was prepared to show that the defect was known to some agent of the company whose duty it was to communicate information of the fact to the officers having charge of such matters. But if he volunteered to repair it, without attempting to give such notice, we are unable to see why the same considerations of public policy which dictated the passage of the act requiring railroad companies to erect and maintain sufficient fences along their tracks, would not devolve the duty upon him to use reasonable care and skill, to make it sufficient; and if he fail in that duty, why the law would not hold him liable for all the ordinary natural consequences. If a man volunteer to repair a bridge which others, and not he, are bound to repair, and in doing so, knowingly puts in rotten, unsafe and insecure planks, and another's team fall through and get injured in consequence, would it be contended that

such volunteer was not liable? Did he not create the nui-
sance? But what would be said if his own team should get
injured by falling through the same planks, and he seek to re-
cover of those bound to repair?

It is apparent, from the undisputed testimony, that appellee
was guilty of a considerable degree of negligence, if he did
not actually cause the injury.

The counsel for appellant urge that the court erred in
amending the following instructions:

6th. That, if the jury believe, from the evidence, that the
plaintiff in this case was interested in having a good fence
maintained along the railroad track, when the cattle got upon
the track, and knew that the fence was insufficient where he
had repaired it—amended by the court, (" and it appeared to
be sufficient without examination ")—and failed to notify the
railroad company of such defect, or some one in its employ,
then the plaintiff cannot recover in this action. Amended by
the court, (" unless the railroad company was guilty of neg-
lect on their part.")

8th. That, if the jury believe, from the evidence, that the
plaintiff fixed the fence at the place where the cattle broke
through it, and fixed it in such a manner as to cause it to ap-
pear to the defendant to be a sufficient fence, although in truth
and in fact it was not a sufficient fence, then the jury must
find for the defendant. Amended by the court, (" unless he
notifies defendant of the insufficiency of the fence.")

The 6th instruction, whether taken as asked or after the
first amendment made by the court, did not correctly embody
the proposition of law intended, because it wholly omits the
hypothesis of the defect not having been known by the proper
agent of the railroad company from other sources.

The failure of the owner or occupant of adjoining land to
use reasonable efforts to notify the company of defects, will
not defeat the recovery in any case where such defects are

known to the proper agent.   Shearman & Red. on Neg. p. 546, sec. 470.

The 8th instruction was not correct as asked.   It should have contained the hypothesis that the defect was unknown to the appellant or its agents.   It might have been constructed in such a manner as to cause it to appear to the defendant to be a sufficient fence, when it was not, and still the defect be known to defendant.   The proposition intended seems to be, that the plaintiff so fixed the fence as to deceive the defendant by having it supposed that the fence was sufficient when it was not, and defendant being so deceived, was thus prevented from making the repairs.   It is too obscure, and we should be unwilling to reverse for refusing it altogether.

But the court gave to the jury, on behalf of appellee, the following:

1st.   That it is the duty of the railroad company, within six months after building their road, to erect and maintain good and sufficient fences along the side of their road to prevent cattle, etc., from straying thereon.   If the jury believe, then, from the evidence, that the C., B. & Q. road has been running for more than six months; and if the jury further believe, from the evidence, that said company failed to keep and maintain such sufficient fence, by reason of which failure the cattle of the plaintiff strayed on said road and were killed, they will find for plaintiff and assess his damages at such sum as they think the plaintiff entitled to receive, not exceeding $100.

This instruction declares the absolute liability of appellant, without reference to the breach of any correlative duty on the part of appellee.   It was too broad, and, under the evidence in this case, should not have been given.

The judgment of the court below must, therefore, be reversed and the cause remanded.

*Judgment reversed.*