### Terre Haute and Indianapolis R. R. Co. v. Sidney B. McCord.

| | |
|---|---|
| 56 | 173 |
| 105 | 3 28 |

1.  RAILROAD COMPANIES—*Insufficient Fences.*—A person owning pasture lands along the track of a railroad, is not required to keep his stock out of such pastures, because the failure of the company to keep its fences in repair makes it probable that such cattle may get upon the track.

2.  NEGLIGENCE—*Contributory, a Question for a Jury.*—Contributory negligence is a question of fact for the jury to determine, when there is evidence before them tending to prove it, which should be submitted to them for their consideration with proper instructions as to the law.

3.  SAME—*What Is Not Contributory.*—A farmer owning pasture land lying along a railroad track, to fence which, and to keep such fences in repair, is the duty of the company, and which duty it neglects, is not to be charged with contributory negligence because his cattle, kept in such pasture, get upon the track and are injured, although he was aware of the insufficiency of the fence.

**Memorandum.**—*Action for injuring stock.*  In the Circuit Court of Edgar County,  on appeal from a justice of the peace; the Hon. FERDI-

nand Bookwalter, Judge, presiding.   Trial by jury; verdict and judgment for plaintiff; appeal by defendant.   Heard in this court at the May term, 1894, and affirmed.   Opinion filed December 14, 1894.

Appellant's Brief, T. J. Golden and J. E. Dyas, Attorneys.

Appellant contended that the owner of stock has no right to voluntarily permit his stock to stray upon the railroad track, through the known insufficiency of fences which the corporation are bound to maintain.   C., B. & Q. R. R. Co. v. Seirer, 60 Ill. 295; Poler v. New York Central R. R., 16 N. Y. R. 476; Ill. Cen. R. R. Co. v. Middleworth, 43 Ill. 64.

H. Van Sellar and J. W. Shepherd, attorneys for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

This action was commenced before a justice of the peace against appellant for injury by its trains, to live stock of appellee, which got on its track through an insufficient fence between his pasture and its right of way.   On the trial in the Circuit Court appellant offered no evidence, and conceded that it was bound to maintain the fence and had neglected its statutory duty in that behalf, but relied on the sole defense that " the conduct of appellee in putting his stock into a pasture from which he undoubtedly believed they would get onto the right of way, was such gross contributory negligence on his part as to constitute a bar to his recovery."

This defense was presented upon the following testimony of the plaintiff on his cross-examination:   " Q.   You knew of the condition of the fence, did you ?   A.   Yes.   Q.   And still you kept your animals in there ?   A.   Yes, sir.   Q. You knew of their liability to get on the track through this fence ?   A.   I thought they were liable.   I had kept my stock out since the fence had been in that condition, but a man can't do that always.   Q.   It was necessary for the stock to be put in there to eat the pasture ?   A.   Yes, sir; to get water and all these things."

While this shows he knew the condition of the fence, and feared his stock would get through, it does not prove beyond doubt that he knew or believed or thought it probable they would. His pasture contained about forty acres. All along the right of way the fence was up, made of posts and five wires, and without a gap. But it had been badly constructed, and in a bad condition for several years. The posts were set sixteen feet apart. Some were broken, many of the staples were rotted out and the wire swinging down. The one next to the top was broken at the place where the colt got out. It certainly afforded some protection to stock, but as certainly was not what it should have been for that purpose. How much of the time he had kept them out on that account does not appear, nor was it shown that any did get through it before June 24, 1893, when the colt was killed. Other animals, sheep and hogs, followed at intervals, July 29th, some time in August, and once afterward. It is therefore not a case of no fence, or substantially none, but only of an insufficient fence; not a case in which it was morally certain or even highly probable that stock would get through it by reason of its insufficiency, before it could be made sufficient by due diligence on the part of appellant, but only of manifest danger that they might. That danger impends at every moment in every case where there is any insufficiency, and yet no injury may be actually done.

There was nothing in the circumstances stated to impose on appellee any duty to appellant. He was not required on its account to make the fence sufficient—appellee was bound by its duty to itself and to the public, and by imperative command of the statute, to do that—nor to give it notice of the insufficiency, for it already had ample notice from other sources: the obvious condition of the fence, the length of time it had existed, and the daily passing and repassing along it by its agents and employes, charged with the duty to notice and repair it. The concession of its negligence is a concession of such notice. Nor was he required to follow it up with repeated requests or any request to repair it. Having such notice, by whatever means, the

statute was more than a request—a daily and constant command to repair it.

The claim is not that appellee contributed to the injury complained of by his omitting to do either of these things, but by his neglect of the duty to himself of taking ordinary care for the safety of his own property; and the only specification is that he put his stock in the pasture, or did not take it out and keep it out, notwithstanding his knowledge of the condition of the fence. No further circumstance tending to show negligence on his part appeared.

Contributory negligence is a question of fact for the jury to determine, where there is evidence before them tending to prove it; which should, therefore, be submitted to them for their consideration, with proper instruction as to the law. Here the court, by consent of the parties, gave his instructions orally; and from the very brief report of them found in the abstract, it does not appear that this question was submitted or in any way alluded to. If the conduct of appellee in the particular mentioned, amounted to such evidence, this omission was error which, if duly excepted to and found to be material, should reverse the judgment.

The question for our determination then, is whether this conduct of appellee, viewed in the light of the circumstances here shown, was proper to be submitted to and considered by the jury as evidence tending to show a want of ordinary care for his stock in the pasture, culpable negligence contributing to the injury that followed.

How could he have avoided it? No way has been suggested but that of taking and keeping them out until the fence should be made sufficient. But it was his pasture, and so far as shown the only lot on his farm of 140 acres from which they could get grass and water. His possession and use of it was in itself rightful, lawful, and doubtless highly convenient and valuable. To keep them out in order to avoid possible harmful consequences of appellant's negligence would clearly be to use not ordinary, but the highest degree of care, and yet to incur, perhaps, a greater risk of loss or as great as that so avoided. We know of no other except to keep a guard over them day and night—a measure

of care as extraordinary, unreasonable and impracticable as in the other case.

He could have given appellant notice in writing to repair the fence under the statute (Hurd's R. S., Ch. 114, sections 65–6), and so acquired the right to repair it himself if the company refused or neglected to do so within ten days; but he was not bound to exercise that right under the burden it imposed, and if he did it would not have avoided the danger, for within the ten days all the injury might be done.

We apprehend that with ordinarily prudent and careful farmers the adoption of either of these courses upon discovering mere insufficiency of the fence, is not the rule but the rare exception, and for some special reason, not appearing in this case; that they ordinarily do no more than give notice to the company and use some more watchfulness for any disposition of the stock. to get out at the weak points, relying for the rest upon the liability of the company for the consequence of its negligence under the statute. What would be the rule if by any means there had come to be no fence, or substantially none, at any place in the line need not now be determined, nor do we mean to intimate any opinion upon that question. But where there is along the whole line what is in any proper sense a fence, though plainly insufficient, we are inclined to hold that for the bare fact that with notice thereof he allows his stock to remain there, the occupant of the pasture is not to be charged with such contributory negligence as should bar his right to recover for damages caused by that of the corporation in the premises. A different rule, it seems to us, would fall materially short of effectuating the intention of the legislature.

The occupant is apt to be among the first to notice any such insufficiency, and considering its importance and the many cases like this which must have occurred, it is somewhat remarkable that able and diligent counsel have found so few authorities thought to be in point upon the precise question here presented. Each of the three cited for appellant appears to us to be clearly distinguishable in principle from the one at bar.

I. & N. I. R. R. Co. v. Jones, 20 Ill. 221, did not arise under the statute, but upon an agreement of the company, before the road was completed, to build a few rods of fence between its right of way and adjacent land of plaintiff on which he kept the sheep that were killed and injured. The road was built, but the fence was not. The cause of action alleged was not negligent mismanagement of the train, but the neglect to build the fence. It appeared, however, that if it had been built it would not have inclosed the lot nor prevented their getting on the track, because the plaintiff had not fenced the other sides, and as the court said, "there was no evidence to show that the animals got upon the railroad by the line the defendants were to fence, and the inference is as fair that they did not so get upon it as that they did." It was therefore held that his own failure to fence the other sides, leaving the sheep exposed "to destruction every hour in the day by trains running at their usual speed," was negligence, which "was the direct and proximate cause of the injury, and the defendants should have the benefit of that principle." Here the pasture would have been securely inclosed and the stock protected, if that part of the fence which the company did build, and was bound to keep sufficient, had been so kept, and the proof was that the animals did get on to the right of way through that insufficient part. The question here involved was, therefore, not touched.

In I. C. R. R. Co. v. Middlesworth, 43 Ill. 64, the declaration contained a count for negligence of the defendant in failing to fence their track, with a second and third for negligent management of the train. It appeared that plaintiff had a large herd of mules in a pen adjoining the roadway, one side of which was formed by the railroad fence, and they broke through that side. The Supreme Court held that the refusal of the following instruction was error:

"5. That although the defendant may have been guilty of negligence in the management of the train in question, yet if the plaintiff was also guilty of a want of proper and reasonable care and prudence on the occasion, by placing so many mules in an inclosure of the size stated, he knowing

the habits and disposition of the mules when frightened, then unless the proof shows that the conduct of the engineer was negligent, and not merely careless and imprudent, the law is for the defendant, and the plaintiff can not recover for the damage done."

From the report of this case it is not to be inferred that the railroad fence was in fact insufficient, or that any claim was made on the evidence under the first count, but that it might have been broken by the mules, though sufficient, and because so crowded into too small a pen and frightened. The instruction was directed against the claim under the other counts, for negligence in the management of the train. With reference to that claim, it was held proper that the jury should consider whether the plaintiff, knowing the habit and disposition of the animals in such circumstances, was not guilty of a want of ordinary care in so crowding them. Here the action is not for mismanagement of the train, but for negligence in failing to maintain a sufficient fence, and the charge is admitted.    The only question is, whether the plaintiff was also guilty, in keeping his stock there with knowledge of its conditions, which the defendant knew as well, and in ample time, before the injury, to make sufficient.

In C., B. & Q. R. R. Co. v. Seirer, 60 Ill. 295, it appeared that some time before the injury complained of, the plaintiff's cattle had broken down a portion of the fence between the track and his pasture.    Without notifying the company or any of its agents, he undertook to repair it, and in doing so, knowingly made and left it insufficient.    He testified that the board he put in was a bad one, though it looked well enough; that he only tacked up the boards temporarily, and it was insufficient at that place to turn stock.    With this knowledge, he permitted his stock to run where they were continually exposed to the danger of getting upon the track by means of this defective portion of the fence.    The cow and steer in question did get through at that place and were killed.    The court held it was his duty to notify, or make reasonable efforts to notify, the company of the defect in the

fence, unless he was prepared to show that it had notice, and if he volunteered to repair it, without attempting to give such notice, he was bound to use reasonable care and skill to make it sufficient. Having done neither, his loss was attributable to his own culpable negligence. They also quote approvingly the observation of Mr. Justice Selden in Poler v. N. Y. Cent. R. R. Co., 16 N. Y. 76, that although the statute imposed upon the railroad company the absolute duty of maintaining fences, the proprietors along the road " have no right quietly to fold their arms, and voluntarily permit their cattle to stray upon the railroad track, through the known insufficiency of fences which the corporation are bound to maintain." But the court does not intimate that knowledge of its mere insufficiency, of which the corporation also has notice, would require them to abandon their adjoining pasture lands until it made them sufficient. If they give notice to the corporation, can it be said that they " quietly fold their arms ? " In Seirer's case, it did not appear that the corporation had notice, but rather that it had not, and that the plaintiff himself, knowingly caused the defect by an act of negligence wholly distinct from the leaving of his cattle in the pasture.

It has been held that even where the owner suffers his cattle to run at large in violation of law, that fact does not, of itself, bar his right to recover of the railroad company for negligently killing it. C. & St. L. R. R. Co. v. Woolsey, 85 Ill. 370; R. R. I. & St. L. R. R. Co. v. Irish, 72 Id. 404. Here there was no act, fact or condition in addition to appellee's leaving his stock with knowledge of the insufficiency of the fence, such as it was, constituting negligence in itself or tending to show that his so leaving them was culpable negligence.

In L. & N. R. R. Co. v. Dulaney, 43 App. 297, plaintiff's mare got out of his pasture adjoining the defendant's right of way through the space that " should have been closed " by the gate " which the evidence showed could not be fastened and was utterly defective," as defendant had known for a long time before the injury. Presumably the plaintiff

also was chargeable with like notice, or he would not have been charged as he was with contributory negligence in allowing her to run in the pasture as he did. The court held that the jury were justified in finding as a fact that he was not guilty. What the court would have done in case the jury had found differently there was no occasion to say. From the expression that the mare escaped "through the space that should have been closed by the gate" it may, perhaps, be inferred that it was entirely open, which might make it a question of negligence for the jury. But we are inclined to hold broadly, as before stated, that where there is really a fence, and not a mere pretense of it, though so insufficient as to be liable to be breached by stock that is not breachy, and the company had notice of it, the rightful occupant of the land may leave his stock there, putting the risk of loss by neglect to make it sufficient upon the company on which rests the duty to make it so; in other words, that merely leaving them there is not negligence nor evidence of negligence on his part which a jury should be allowed to consider. The law should not and does not, in our opinion, oust him nor permit a jury to oust him of the valuable use of his own land for that cause, in such a case. Judgment affirmed.